Day, J.
The plaintiff’ in error was tried and convicted under the following indictment:
“ Catherine Shriedley, on the 26th day of April, in the-year 1872, at the county of Lucas aforesaid, forty-eight yards of carpeting of the value of seventy-seven dollars;twenty-three yards of carpeting of the value of thirty- *139 seven dollars, the goods, chattels, and property of the Lake' Shore and Michigan Southern Railway Company, a corporation then and there being, lately before feloniously stolen, taken, and carried away, unlawfully and feloniously? did receive, bay, and. conceal, with intent thereby to defraud the said Lake Shore and Michigan Southern Railway Company, the owners thereof, she (the said Catherine Shriedley) then and there well knowing said goods, chattels and property to have been feloniously stolen, as aforesaid, against the peace and dignity of the State of Ohio.”'
The validity of the indictment was questioned, by a motion in arrest of judgment, on two grounds : First, that the name of the thief from whom the goods were received is not shown, nor that his name is unknown; second, that it does not show that the goods were “ stolen or taken by robbers.”
As to the first point, it is only necessary to state that it is-settled, “ as the general doctrine, that an indictment for the substantive offense of receiving stolen goods need not name the original thief.” 2 Bish. Cr. Pro., sec. 927, and numerous authorities there cited.
The second point arises upon a construction of the statute on which the indictment is founded. The statute is as follows:
“ That if any person shall receive or buy any goods or chattels, of the value of thirty-five dollars or upward, that shall have been stolen or taken by robbers, knowing the same to be stolen or taken by robbers, with intent to defraud the owners ; or shall harbor or conceal any thief or robber, knowing him or her to be such; every person so offending.shall be deemed guilty of a misdemeanor,” etc.
It is claimed that, as there is no pause between the word “ stolen ” and the words “ taken by robbers,” the words “by robbers'” apply to both the word “stolen” and the word “ taken,” and that therefore the averment in the indictment must be that the goods received were “stolen by’ robbers,” or “ taken by robbers.”
This construction of the statute does violence to the evi *140 dent legislative meaning and intent. It is based solely on the punctuation, which may always be disregarded, or made to conform to the clear meaning and intention of the statute. It is entirely clear that the legislature intended, by this statute, to do more than.punish the fraudulent receiving or buying of such goods only as were taken from the person of another by violence or putting him in fear. Both the reason and language of the statute require a broader construction. It was as much the legislative intent, by the first clause of the statute, to make the receiving of stolen goods a crime, as it was, by the next clause, to make it a crime to harbor or conceal a thief; and it can not be doubted but that the concealment- of a thief is a crime under this statute, though he may not be a robber.
The question would doubtless never have arisen had there been a comma inserted after the word “ stolen,” where it first occurs in the statute, thereby rendering the meaning too obvious for doubt or cavil.
It follows that the court did not err in overruling the motion in arrest of judgment.
For the purpose of identifying the carpeting found in the possession of the prisoner, and showing that it was stolen from the cars, of the Lake Shore and Michigan Southern Railway Company, evidence was offered tending to show ¦that the carpeting was purchased in New York, to be forwarded by rail to the purchaser in Chicago; that it was put on the cars in Jersey City; that it was duly transferred from car to car, and placed on the ears of the Lake Shore .and Michigan Southern Railway Company, and that it never arrived in Chicago. For the purpose of showing that the carpeting was placed on the cars and regularly transhipped from one car to another, until placed on the car from which it was claimed to have been stolen, “check-slips,” containing the number of the car to which the carpeting was transferred, and the descriptive marks on the goods, were offered in evidence, on the part of the state, together with the testimony of a witness at each transhipment, that, in the regular course of the business, it was the *141 duty of the one placing goods in the cars, to call the description of the goods; that it was the duty of the witness to check all freight, so called, to him; that all the goods so checked went into the cars -in his presence; that he had no recollection of the. carpeting, or of the “ check-slips,” but they were made'in the regular course of business, in his own handwriting, at the time the goods must have passed into the cars. The counsel for the prisoner objected to the admission of this testimony, together with the “ check-slips,” in evidence; but the objection was overruled, and they were permitted to be given to the jury. Upon exception to this-ruling, the question is made whether the “ check-slips,” in connection with the testimony offered, were admissible in evidence.
The question is not whether the “ check-slips,” with the testimony of the witnesses by whom they were made, were alone sufficient to identify and prove the transhipment of the carpeting in question; but did the evidence tend to establish these facts? and was it of a character that might be admitted for what it was worth. The “check-slips” were made in the usual course of business, and were a part of the transaction in transferring the carpeting from one car to another. They were made for the purpose of identifying the goods and evidencing their transhipment, and were made from what was done in the presence and under the observation of the witnesses who made them; so also were the “ calls ” of the descriptive marks of the goods, by their assistants, in the usual course of the business; and the slips so made were received and acted upon by all parties engaged in the business of transporting the goods.. Doubtless the testimony of the “caller,” that the goods and marks were correctly “called,” would much strengthen the evidence; but, while that would also be admissible, we think, upon the authority of the case of Moots v. The State, 21 Ohio St. 653, that the court did not err in admitting the - evidence offered. In this ease, as in that, in each instance, the entry made by the witness at the time, and as a part of the transaction, and his oath supplement each other. The *142 "check-slips,” in this case, like the. book in that, were really part of the testimony of the respective witnesses, and were, therefore, admissible with it in evidence.
Evidence having been given on the part of the' state, tending to show that the property mentioned in the indictment, had been stolen from the cars of the Lake Shore and Michigan Southern Railway Company; that one Charles Rapp had stolen it from the.company and sold it to the defendant under its value, informing her at the time that "the property had been stolen ; the court, against the objection of the defendant, permitted the state to give evidence that Rapp had previously sold to the defendant other goods which she knew were stolen. Did the court err in admitting this evidence? Clearly it was admissible for no other purpose, than as a circumstance tending to show that the defendant knew that the goods, for the receipt of which -,she was on trial, had likewise been stolen. The circumstance, of itself, may be of little value, for it does not necessarily follow that the goods mentioned in the indictment were stolen because the others were; but when taken in connection with other circumstances, such as that the goods mentioned in the indictment were sold under value, received at night, or concealed, it might strongly tend to fasten guilty knowledge upon the defendant. But, without discussing the question upon principle, I deem it only necessary to say, that we are constrained by the authorities to hold, that, upon the trial on an indictment for receiving certain stolen goods, knowing them to have been stolen, evidence that other goods, known to have been stolen, were previously received by the defendant from the same thief, is admissible for the purpose of showing guilty knowledge on the part of the accused that the goods, for receiving which he is charged, were stolen. The King v. Dunn, 1 Moody’s C. C. 146; Devoto v. Commonwealth, 3 Met. (Ky.) 417; People v. Rando, 3 Park. Crim. 335; Rex v. Davis, 6 C. & P. 177; 3 Greenl. Ev., sec. 15, and note; 2 Whart. Am. Crim. Law, sec. 1889; 2 Russ. on Crim. 251; Ros. Crim. Ev. 875.
*143 In Regina v. Oddy, 5 Cox’s C. C., also 4 E. L. & E. 575, decided in 1851 by the English Court of Criminal Appeal, it -was held that, “ upon a charge of feloniously receiving stolen goods, the possession of other stolen goods, not connected with the immediate charge, is not admissible as evidence of guilty knowledge.” But that case, it is believed, has not been generally followed in this country, and, in 1871, was substantially abrogated in England by legislative enactment; we do not, therefore, regard the authority of that case sufficient to warrant us in overturning the practice long established, upon the weight of authority both in England and America.
The witness Rapp, having testified in behalf of 'the state, -that he, in company with another, had stolen the carpeting in question from the railroad company, and sold it to the defendant, was asked, on cross-examination, if he wrote a letter shown to him. He replied that he did not; that he could neither read nor write; that he never authorized it to be written ; that he never sent it to the defendant; that he never saw the letter before; that he never wrote, dictated, or sent a letter to the defendant; and that he knew two men, while in jail, by the name of McKay and Dodard, but at no time while there, had anything to do with them about this or any other letter.
The defendant proved that, while in jail, McKay was in the habit of writing letters for Rapp; that he wrote a letter in pencil on a fly-leaf of a book, apparently for Rapp, who -stood by his side; that he handed the letter produced, which was written on the fly-leaf of a book, to Dodard, with the request that he would give it to the defendant; and that it was handed by him to the husband of the defendant to be given to her. The letter purported to be written in jail, was written with a pencil, and addressed to the defendant. It contained statements somewhat explanatory of, and contradictory to the testimony of Rapp, given in chief for the state. The letter was offered in evidence on the part of the defendant, but, being objected to by the prosecutor, was rejected by the court. In this we think the court erred. *144 The evidence tended to show that Rapp dictated the letter, and positively showed that he adopted it as his own, and sent it to the defendant. We regard this as showing, prima facie, that the letter was written for him, and at his dictation, and should therefore have been admitted. Of coarse the veracity of the witnesses, and the value of the letter, were all for the consideration of the jury. Every thing in the case depended on the credit to be given to the .witness Rapp, and the defendant was entitled to all the evidence in. the case legitimately bearing on the question of his veracity.
Since the judgment must be reversed, the other questions,., made on a motion for a new trial, become unimportant, and need not be further noticed.

Judgment reversed, and cause remanded for a new trial.